[No. B127865. Second Dist., Div. Four. Aug. 18, 1999.]

THE PEOPLE, Plaintiff and Appellant, v.
KEITH ELLIS GASTON, Defendant and Respondent.

## COUNSEL

Gil Garcetti, District Attorney, Brent Riggs and Otis L. Hubbard, Deputy District Attorneys, for Plaintiff and Appellant.

Bruce A. Hoffman, Alternate Public Defender, Felicia Kahn Grant and Thomas P. McLarnon, Deputy Alternate Public Defenders, for Defendant and Respondent.

## OPINION

**EPSTEIN, Acting P. J.**—Respondent Keith Ellis Gaston was convicted and sentenced under the "Three Strikes" initiative statute, Penal Code section 1170.12,[1] a measure adopted at the November 1994 General Election as Proposition 184. The ballot pamphlet argument in favor of the proposition urged its adoption, in part, to save taxpayers the costs of "running career criminals through the judicial system's revolving door over and over again." (Ballot Pamp., Initiative Statute with arguments to voters, Gen. Elec. (Nov. 8, 1994) p. 36.) Gaston presents one of the clearest examples of a revolving-door criminal we have seen. He is, we believe, what the framers of the proposition had in mind in urging its adoption. We infer the voters shared that sentiment in approving the measure.

Except for a short period in the 1980's, Gaston has spent almost his entire adult life in state prison, county jail, on parole, or on probation. During a

---

[1]All further section references are to the Penal Code unless otherwise indicated.

lifelong period of crime, he has been convicted of two crimes classified as serious felonies, as well as some dozen other felonies; he has been in prison on multiple separate occasions, in addition to his return to prison for violation of parole; and he has been in county jail during a good portion of the time in the interstices between these confinements. He was on parole when he committed the present crime, a violation of Vehicle Code section 10851. His record of repeated crimes and punishments demonstrates that he knew that his "criminal conduct was unacceptable—but had failed or refused to learn his lesson." (*People* v. *Gallego* (1990) 52 Cal.3d 115, 209, fn. 1 [276 Cal.Rptr. 679, 802 P.2d 169], quoted in *People* v. *Williams* (1998) 17 Cal.4th 148, 163 [69 Cal.Rptr.2d 917, 948 P.2d 429].)

The trial court dismissed one of Gaston's prior serious felony convictions and sentenced him as a "second striker." The People appeal the resulting sentence. (§ 1238, subd. (a)(10).) We conclude the dismissal of the prior serious felony conviction was an abuse of discretion because Gaston cannot be deemed outside the spirit of the Three Strikes law, even in part. (See *People* v. *Williams, supra,* 17 Cal.4th at p. 163.) We therefore shall reverse the judgment with respect to the sentence imposed and remand the case with directions to reinstate the strike finding and to resentence Gaston as a third striker.

### Factual and Procedural Summary

In an amended information, Gaston was charged with unlawful driving or taking of a vehicle (Veh. Code, § 10851, subd. (a); count 1) and receiving stolen property (§ 496, subd. (a); count 2), and was alleged to have suffered two strikes (§ 1170.12, subds. (a)-(d)) and to have served four prior prison terms (§ 667.5, subd. (b)).

He was convicted of the offenses charged in counts 1 and 2 following a jury trial. The evidence presented at trial established that in the early morning of February 9, 1998, two Los Angeles County sheriff deputies on patrol noticed a van with a window down even though it was raining. The deputies followed as the van pulled into a gas station. After a license plate check disclosed the van had been reported stolen the day before, the deputies effected a traffic stop. When detained, Gaston gave a false name. Upon inspecting the van, Deputy Nichol discovered that the glass of the driver's side window was completely broken. He found glass on the seat and on the ledge to the step-up into the van. The steering wheel column on the left side had been broken and peeled back, exposing the mechanism which holds the key in the lock on the steering column. This enabled a person to start and stop the van and to turn the wheel without a transmission key. Deputy Nichol also found four or five pieces of glass in Gaston's jacket pocket.

Following his conviction, Gaston waived his right to a jury trial on the prior conviction allegations. The court found true the allegations that Gaston had suffered two serious felony convictions ("strikes") and that he had served four prior prison terms.

On August 31, 1998, at the conclusion of the hearing on appellant's motion to dismiss his strikes, the court granted the motion as to his 1981 "armed robbery" strike. The court minute of that hearing states that "[a]ttached to each copy of this minute order is [*sic*] the reasons under . . . section 1385[, subdivision (a)] for striking one [strike]."

The minutes further recited: "In summary, the court orders that 'in light of: (1) the non-serious nature of the present crime, even though a felony, (2) the circumstances surrounding commission of the crime, especially the absence of any use of force, and (3) the defendant's appreciation of the attitude towards the offense," the 1981 prior conviction for "armed robbery" dismissed.

The court sentenced appellant to prison to a term of ten years, consisting of double the three-year upper term on count 2, plus one year for each of the four-year prior prison terms.

## DISCUSSION

### I

█ Pursuant to section 1385, subdivision (a), "in furtherance of justice," the trial court may dismiss an allegation or vacate a finding that a prior serious or violent felony conviction qualifies as a strike under the Three Strikes laws. On appeal, we review the court's ruling under the abuse of discretion standard. (*People* v. *Superior Court (Romero)* (1996) 13 Cal.4th 497, 504 [53 Cal.Rptr.2d 789, 917 P.2d 628]; accord, *People* v. *Williams, supra,* 17 Cal.4th at pp. 151-152, 158-159.)

"The governing canons are well established: 'This discretion . . . is neither arbitrary nor capricious, but is an impartial discretion, guided and controlled by fixed legal principles, to be exercised in conformity with the spirit of the law, and in a manner to subserve and not to impede or defeat the ends of substantial justice. [Citations.]' (*People* v. *Warner* (1978) 20 Cal.3d 678, 683 . . . .) . . . '[A]ll exercises of legal discretion must be grounded in reasoned judgment and guided by legal principles and policies appropriate to the particular matter at issue.' (*People* v. *Russel* [(1968) 69 Cal.2d 187,] 195 [70 Cal.Rptr. 210, 443 P.2d 794].)" (*People* v. *Superior Court (Alvarez)* (1997) 14 Cal.4th 968, 977 [60 Cal.Rptr.2d 93, 928 P.2d 1171].)

The abuse of discretion standard "is deferential. . . . But it is not empty." (*People* v. *Williams, supra,* 17 Cal.4th at p. 162.) The touchstone for that standard, where a trial court is asked to dismiss a prior serious or violent felony conviction which qualifies as a strike "in furtherance of justice" pursuant to section 1385, subdivision (a), was first stated in *Williams* and was recently reiterated in *People* v. *Garcia* (1999) 20 Cal.4th 490, 503 [85 Cal.Rptr.2d 280, 976 P.2d 831]. It is whether "in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant *may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies.*" (*People* v. *Williams, supra,* 17 Cal.4th at p. 161, italics added; *People* v. *Garcia, supra,* 20 Cal.4th at p. 503.)

█ In deciding a defendant's "prospects" for committing future crimes, the sentence imposed by the trial court is itself a factor, since the defendant presumably will have fewer opportunities to commit crime while in prison. "[A] defendant's sentence is also a relevant consideration when deciding whether to strike a prior conviction allegation; in fact, it is the overarching consideration because the underlying purpose of striking prior conviction allegations is the avoidance of unjust sentences." (*People* v. *Garcia, supra,* 20 Cal.4th at p. 500.) That is why in multiple present felony cases, a trial court may be justified in striking prior conviction allegations as to one such felony but not another (*ibid.*), or in a felony-misdemeanor ("wobbler") case, in choosing to treat the present offense as a misdemeanor. (See *People* v. *Superior Court* (*Alvarez*), *supra,* 14 Cal.4th 968.) Applying these standards, the Supreme Court found that the trial court had abused its discretion in dismissing prior convictions in order to sentence a defendant as a "second striker" in *Williams*, but had acted within its discretion in dismissing prior serious felony convictions as to one present felony conviction but not another in *Garcia*.

With these principles in mind, we proceed to a consideration of the exercise of discretion in this case.

## II

Since the trial court's exercise of discretion is central to this case, we set out its statements and the pertinent colloquy in detail.

In its initial tentative ruling, the court announced its intent "to strike one of the priors . . . ." The "remoteness in time of the prior felonies which

date back to 1981" was one factor the court considered. It also considered as factors appellant's "age, [and] his medical condition . . . ." The court stated that it had also taken into account as factors appellant's "four prior prison felonies, and [his apparent inability] to keep his hands off other people's property." It added that "[f]ortunately, none of these are residences [*sic*], or any serious felony."

Prior to exercising its discretion under section 1385, the court reaffirmed its earlier tentative ruling and delineated its reasoning further. The court reasoned: Appellant "is certainly not the worst this court's seen when one thinks of the all too often violent recidivists not only known to this court, but other courts in the state; by the same token, he's certainly not the best that we've seen come before this court.

"The court has considered the fact that the two prior serious or violent felonies occurred approximately seventeen years ago, 1981, almost contemporaneously, more than seventeen years ago.

"He's had several run-ins with the law since that time and created a rather large blip on the criminal radar screen from—starting in the early 90's.

"His last conviction was two years ago for a similar offense for which he stands convicted, and that was in 1996.

"So he's managed to incur four prison priors within a very short period of time.

"I've also considered in striking the prior the fact that defendant is 44 years of age, and also has a diabetic condition, and the court does take notice of the fact that recidivism does decrease somewhat with the advanced age of various criminal defendants, and that was one consideration the court took into consideration in striking one of the priors.

"Another consideration that the court considered was the fact that although he does have a rather long history of criminal involvement, and particularly this large blip that I mentioned on the radar screen in the recent past, none of these offenses, although felonies, are serious or violent felonies . . . ."

The court further indicated its intent to order Gaston pay the victim $750 as restitution. It explained that "[t]his [sum] will repair a window that was broken, also a steering column . . . ."

In opposing the court's intended ruling, the prosecutor highlighted the following criminal history, which was summarized in the People's written

sentencing memorandum: "Yes, we do have a 44-year-old man who appears to be a transient.

"He first came to the system in 1972, and he was convicted of grand theft property.

"Since then—and in that same year—he was convicted of a burglary. [¶] 1974, grand theft auto. ·

"In July of that same year, assault with a deadly weapon. There was a conviction.

"The following convictions also come forth:

"In March of 1976, receiving stolen property.

"January[] 1977, grand theft.

"March[] 1977, grand theft auto.

"September[] 1977, driving while under the influence.

"October[] 1978, grand theft.

"In 1981, that's when he received the kidnapping and robbery charges, your honor. Both appear to be somewhat violent in nature.

"Just because of the charges themselves—I believe a child was involved, though I believe no one was actually injured—got five years on that case.

"Somewhere along the line he's paroled in 1990. He gets convicted of possession of a controlled substance.

"1990 he was also convicted of joyriding.

"1991 he was convicted of burglary.

"1994, following his release from state prison, he was convicted again of joyriding; and in 1996, again, joyriding.

"Then we have this 1998 case which is what he was just convicted of, again, doing the same thing, joyriding."

The court responded by first pointing out that it laid "out [Gaston's] entire criminal history in [its] memorandum which will become part of the minute

order setting forth the criminal history." The court then related its findings regarding Gaston's criminal history and background.

It stated: "In the years '72 through '78 as you aptly pointed out, he had several theft-related offenses for which he was convicted, but I note in reviewing this matter apparently none of the sentencing judges thought they were that serious in that he never did any prison time for any of these priors, and I don't want to minimize the prior serious or violent felonies, but reading through the probation report, apparently [Gaston] when it comes to serious or violent felonies is much more of a follower than a ring leader, and he didn't actually cause any physical harm to the victim, although several other perpetrators did in that instance.

"As far as the kidnapping charge, I don't want to minimize the psychological effect on the child, but by the same token, the child was not bodily harmed in anyway, and the court has given strong consideration to these prior serious felonies, but I think the court also has to within the spirit of the Three Strikes law balance the defendant's rights under the Eighth Amendment, both the U.S. and the state Constitutions, and as to the to present offense for which the defendant stands convicted I have considered in the weighing process the fact that the property was immediately recovered and that there was no violence involved, and the victim was made whole in this case, and was made even further whole as part of the sentencing.

"So I think in part now [Gaston] does fall outside the three-strike law, and this court under no circumstances feels that it's being too benevolent towards this defendant, and the reason I say that is each year or so long [as appellant is] incarcerated I think [there] will be an increasing charge on public funds while he's in state prison, and I anticipate that his medical costs will be increasing substantially because of his diabetic condition, so that was one of the factors the court considered, but I think the salient factor is although he's had several brushes with the law since he was convicted of the serious and violent felonies in 1981, none of these offenses involved serious or violent felonies, and in view of his age and what we're talking about here, I think a ten-year prison term is nothing to be sneezed at."

The court then vacated the 1981 robbery strike finding.

In the nine-page typed memorandum incorporated by reference into the minute order setting forth the court's ruling, the court charted the nature of each of Gaston's prior felony and misdemeanor convictions. It noted the dates of each conviction, and the disposition in terms of probation, jail time, or prison term, and the length thereof.

The court made the following observations with respect to these crimes: Gaston had "four convictions between the years 1990 and 1996, three being theft-related, including two auto thefts identical to the crime for which [Gaston] now stands convicted, and the other involves possession of cocaine.

"During the 1971 to 1978 time frame, [appellant] was also convicted of numerous theft-related offenses. None of those crimes, apparently, were considered to be particularly egregious by the sentencing judges since the defendant never received any more than probation and time in the county jail aside from the two prior 'strike' convictions for robbery and kidnapping in 1981, 17 years ago, none of the enumerated offenses involve violence against society, or threat of serious harm to its members."

With regard to the 1981 strikes, the court stated: "On June 18, 1981, defendant was convicted of the crime of robbery in violation of Penal Code § 211, robbery with the use of a dangerous weapon under Penal Code § 12022(b), to wit a knife. However, it appears that defendant, while acting in concert with others, was not the ringleader and personally did not cause any physical harm to the victim. He was sentenced to state prison for a term of five years as a result of his conviction.

"On June 29, 1981, defendant pled guilty to the crime of kidnapping in violation of Penal Code § 207. Apparently, he picked up a young girl outside her home and transported her down the street. It appears that no physical harm came to the child. Following the entry of his guilty plea, the defendant was sentenced to state prison for a period of three years to run concurrently with the robbery conviction, and was paroled in December 1983."

After recounting the evidence presented at trial and the jury's verdict in the current case, the court stated "the present offense for which [appellant] has been found guilty, i.e., taking a vehicle without the owner's permission, and the lesser included offense of receiving stolen property, are not classified under the penal code as serious and/or violent felonies. Further, as to the circumstances surrounding the crime, there are absolutely no aggravating aspects. Defendant did not use any force or violence in the commission of the crime, did not struggle when apprehended, and the stolen property (the vehicle) was recovered by its owner."

On the factor of Gaston's "background, character and prospects, the Court noted[d] that [Gaston] is 44 years old, and his immediate background is not particularly favorable since he spent most of the past eight years in state prison or on parole. The probation report indicates that [Gaston] was raised in a broken home, is currently homeless and has been unemployed for the

past five years, and that drug use appears to be an underlying factor in [Gaston's] criminal behavior, and in fact may be the root cause thereof. It is also clear that [Gaston] has spent most of his life on the street, although it appears that he may have been marginally employed from time to time over the years. This 44-year-old [Gaston] is also apparently diabetic."

Although noting that "there is little about [Gaston's] background, character or prospects that is favorable[,]" the court reiterated that he "is certainly not the worst we have seen . . . . Moreover, the Court does take note of statistics which indicates that criminal activity does decrease [with] age."

Against Gaston's two 1981 prior serious felony convictions, the court weighed "the nature of the present alleged felony and the lesser included offense for which [he] stands convicted and the circumstances surrounding his commission are largely mitigating, i.e., [Gaston] did not use any force or violence in committing the present crime, and the victim . . . recovered the vehicle taken . . . ."

The court stated it exercised its discretion to vacate the 1981 "armed robbery" strike finding "[i]n light of: 1) the non-serious nature of the present crime, even though a felony, 2) the circumstances surrounding commission of the crime, especially the absence of any use of force, and 3) [appellant's] appreciation of and attitude towards the offense . . . ."

III

Based on our review of the record and the trial court's reasoning, tested against the standards pronounced by our Supreme Court, we conclude that the trial court abused its discretion in vacating the 1981 robbery strike finding.

As is apparent from the trial court's thoughtful statements from the bench and in its sentencing memorandum, the decision in this case was deliberate and not capricious. We do not lightly conclude that an abuse of discretion has occurred. But we are compelled to that conclusion in this case because of Gaston's unrelenting record of recidivism, even while on parole or probation from previous felony convictions. As we observed at the outset, he is the kind of revolving-door career criminal for whom the Three Strikes law was devised.

Although we agree that the nature of the current crime is a proper factor, we disagree that "the absence of any use of force" is a factor. The use of force against the victim would have transformed the crime into carjacking,

which itself is a serious felony. (§§ 215, 1192.7, subd. (c)(27).) It appears that force was used to take the car, as evidenced by the smashed window. While the crime is not as serious as many felonies—indeed it is not defined as a "serious felony"—it is far from trivial.

We also conclude that the remoteness in time of the 1981 strike priors is not significant in light of Gaston's continuous crime spree, which. has substantially spanned his entire adult life. As the court noted, Gaston suffered numerous convictions after 1991. The court also noted that his "performance while on parole is totally unsatisfactory." Indeed, it was. Gaston was on parole when the present crime was committed.

In view of these facts, we cannot conclude that appellant led a crime-free life during the period between his 1981 strike priors and his current crimes, a factor which would give significance to the remoteness in time of those strikes. (See, e.g., *People* v. *Humphrey* (1997) 58 Cal.App.4th 809, 813 [68 Cal.Rptr.2d 269].)

The trial court reviewed the *Williams* factors and applied them to this case. It stated three reasons for striking one of the prior serious felony convictions.

The first is "the non-serious nature of the present crime, though a felony." It is true that Vehicle Code section 10851 is not classified as a "serious felony," and it is not as serious as crimes in which violence is inflicted or threatened against a person. But, as we have discussed, the circumstances of the crime in this case are aggravating (we note that the trial court selected the high term for purposes of sentencing), involving a smash-in to a car and peeling off of the steering column cover. The second factor listed by the trial court is "the circumstances surrounding commission of the crime, especially the absence of any use of force." Other than the suggestion, which appears elsewhere in the court's statement, that Gaston was committing crimes to support his drug habit, this factor appears quite similar to the first. The final factor is "the defendant's appreciation of and attitude towards the offense." We do not know what this means in the context of the crime. Gaston did not exhibit contrition and did not cooperate with police in interrogation. And his entire criminal history belies appreciation of the social cost or morality of the crimes he commits.

Elsewhere in the trial court's statement of reasons it is noted that Gaston apparently is a diabetic. There is a suggestion of that condition in the probation report, but we fail to see how it can be considered as mitigating. It also is pointed out that Gaston was 44 at the time of sentencing, and the court noted, but did not cite, "statistics which indicate that criminal activity

does decrease" with age. We agree that the length of Gaston's sentence is a factor under the *Garcia* analysis. The court's statement points out that Gaston did not lead the persons involved in the robbery that gave rise to the prior conviction the trial court dismissed, and that the small girl who was kidnapped by Gaston was not harmed.

Our review of Gaston's background, character and prospects leads to a conclusion directly contrary to that of the trial court. His prospects are particularly grim in light of the fact he is a 44-year-old homeless person who "has been unemployed for the past five years," has passed "most of the past eight years in state prison or on parole" and "has spent most of his life on the street . . . ." Although "drug use appears to be an underlying factor in [appellant's] criminal behavior, and in fact may be the root cause thereof," the record is barren of any attempts by Gaston to "root out" such destructive drug dependency. Accordingly, his drug dependency does not fall into the category of mitigating circumstances. (See, e.g., *People* v. *Williams, supra,* 17 Cal.4th at p. 163; *People* v. *Martinez* (1999) 71 Cal.App.4th 1502, 1511 [84 Cal.Rptr.2d 638].) The trial court also mentioned the cost of incarcerating Gaston for an indefinite life term. That is not a factor that may be validly considered in sentencing.

The facts in this case present a sharp contrast to those in *Garcia.* In *Garcia,* the defendant committed his prior crimes during a "single period of aberrant behavior . . . ." (*People* v. *Garcia, supra,* 20 Cal.4th at p. 503.) Gaston did not. Like *Garcia,* his current crime was committed while he was on parole, but his criminal history includes convictions for an armed robbery, assault with a deadly weapon, and kidnapping, each of which involves a threat of violence. (See *People* v. *Ordonez* (1991) 226 Cal.App.3d 1207, 1227 [277 Cal.Rptr. 382]; *People* v. *Pearch* (1991) 229 Cal.App.3d 1282, 1298 [280 Cal.Rptr. 584].) His criminal career spanned three decades, from a grand theft conviction in 1972 to his present crime in 1998. As to neither count can Gaston be "deemed [to be] outside the [Three Strikes] scheme's spirit . . . ." (*People* v. *Williams, supra,* 17 Cal.4th at p. 161.)

The record indicates that Gaston has received a number of breaks and has benefited from none of them. The trial court noted his failure to do anything to help himself. What comes through most prominently from a review of all of the circumstances is that he has committed an unending series of felonies, as well as other crimes, has been repeatedly punished for these crimes, including the service of four prior prison terms, and has failed to learn anything from the experience.

Accordingly, appellant cannot reasonably be said to be outside the "spirit" of the Three Strikes law, in whole or in part. It follows that the trial court

abused its discretion in concluding that Gaston should be treated as though he had committed only a single serious felony, and was outside the spirit of the sentencing statute to that degree. We conclude the court abused its discretion in vacating the 1981 robbery strike finding.

### Disposition

The order vacating the 1981 robbery strike finding is reversed, and the matter is remanded with directions to reinstate that finding and to resentence appellant as a person who has suffered two prior serious felony convictions. In all other respects, the judgment is affirmed.

Hastings, J., and Curry, J., concurred

Appellant's petition for review by the Supreme Court was denied November 10, 1999.