Filed 1/23/26  P. v. Jenkins CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>　v.<br><br>KELVIN JAY JENKINS,<br><br>　　Defendant and Appellant. | D084989<br><br><br>(Super. Ct. No. SCD295885) |

APPEAL from a judgment of the Superior Court of San Diego County, Runston G. Maino, Judge.  Affirmed.

Monica McMillan, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Arlene A. Sevidal and Jon S. Tangonan, Deputy Attorneys General, for Plaintiff and Respondent.

## INTRODUCTION

Following a jury trial and conviction for willful cruelty to an elder resulting in great bodily injury (Pen. Code,[1] § 368, subd. (b)(1)), Kelvin Jay Jenkins filed a motion to dismiss a prior strike conviction under *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*).  On appeal, Jenkins contends the trial court abused its discretion in denying his motion.  We disagree and affirm.

## BACKGROUND

In July 2022, an 82-year-old volunteer was taking out the trash at the San Diego Automotive Museum in Balboa Park when Jenkins ran up to him and struck him in the face with a wrench.  Jenkins fled the scene on a bicycle.  The volunteer was taken to the hospital with a broken nose and received six stitches to close a laceration.  Jenkins was arrested more than a month later in Balboa Park.

In addition to charging Jenkins with willful cruelty to an elder resulting in great bodily injury, the information alleged he personally used a deadly or dangerous weapon (§§ 12022, subd. (b)(1), 1192.7, subd. (c)(23)) when he committed the offense, that the attack caused great bodily injury (§ 12022.7, subd. (c)), and that he had a serious felony prior conviction and a strike prior conviction.

The jury found Jenkins guilty on the sole count of the information, found true the allegation that he used a dangerous or deadly weapon during the attack, but found untrue the allegation that he caused great bodily injury during the attack.

---

[1]     Undesignated statutory references are to the Penal Code.

Before sentencing, Jenkins filed a statement in mitigation and a *Romero* motion. He argued the trial court should dismiss the prior strike conviction because "[t]he crime was directly attributable to [Jenkins'] altered state of mind, which he attributes to methamphetamine use and to being off his psychotropic drugs." He argued that, "[w]hile sober, [Jenkins] is not a violent man." He also argued "[t]he most important detail that the court should consider is the fact that [Jenkins'] 'strike' prior is remote in time."

The prosecutor argued that dismissing the prior strike conviction would not be in the interest of justice. He pointed out that Jenkins was convicted of a "completely unprovoked" attack and that, even though his prior strike offense was nearly 30 years old, his crimes have turned "away from drugs and towards innocent victims" over the last 10–15 years.

At the hearing on the motion, the trial court identified the "main issue" as the "1992 strike." It explained that it had read the probation report from that case and that Jenkins "hit the victim," "a jacket was stolen" and when Jenkins arrested "he had the victim's keys." The court further noted that Jenkins "was only 24 years old and is now 54; and no weapons were involved. And, as I remember it, there was no serious damage to the victim." The court also remarked it knew "about the present case because I was the trial judge on it, and then I know some of the factors of good and bad because I read the statements by both sides."

The trial court further explained, that "normally a strike this old would be stricken," however it considered "the nature and seriousness of the present offense," the number of Jenkins' prior controlled substance violations and that some of them were "attached to some violence." Based on this history and the recentness of his prior abuse history, the court found Jenkins was "a present danger because [he] can't control [his] drug use." It also noted the

multiple times Jenkins failed to successfully complete probation. Accordingly, the court declined to dismiss the prior strike conviction.

The trial court sentenced Jenkins to a total of seven years in prison as follows: a three-year middle term, doubled to six years because of a prior strike offense, plus one year, consecutive, for the personal use of a dangerous or deadly weapon.

## DISCUSSION

"[T]he Three Strikes initiative, as well as the legislative act embodying its terms, was intended to restrict courts' discretion in sentencing repeat offenders." (*Romero*, *supra*, 13 Cal.4th at p. 528.) Trial courts have discretion to dismiss "strike" prior convictions in limited cases where the dismissal is "in furtherance of justice." (*Id.* at p. 530; § 1385.) The court determines "whether, in light of the nature and circumstances of [the defendant's] present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the [Three Strikes] scheme's spirit." (*People v. Williams* (1998) 17 Cal.4th 148, 161 (*Williams*).) A recidivist falls outside the spirit of the law "only in extraordinary circumstances." (*People v. Anderson* (2019) 42 Cal.App.5th 780, 786.) An unrelenting record of recidivism compels the conclusion that a defendant falls within the spirit of the sentencing scheme. (*People v. Gaston* (1999) 74 Cal.App.4th 310, 320 (*Gaston*).)

We review a trial court's refusal to strike a prior conviction allegation for abuse of discretion. (*Williams, supra,* 17 Cal.4th at p. 162.) Absent a showing that the court acted arbitrarily or irrationally, we presume the court "acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on

review." (*People v. Superior Court (Du)* (1992) 5 Cal.App.4th 822, 831.) We do not reweigh evidence; nor do we substitute our judgment for that of the trial court. (*People v. Carmony* (2004) 33 Cal.4th 367, 377 (*Carmony*).)

"A trial court will only abuse its discretion in failing to strike a prior felony conviction allegation in limited circumstances," such as "where the trial court was not aware of its discretion to dismiss, or where the court considered impermissible factors in declining to dismiss." (*Carmony, supra*, 33 Cal.4th at p. 378 [cleaned up].) Only in "an extraordinary case—where the relevant factors . . . manifestly support the striking of a prior conviction and no reasonable minds could differ" would "the failure to strike . . . constitute an abuse of discretion." (*Ibid.*)

Jenkins has not met his "burden . . . to clearly show that the sentencing decision was irrational or arbitrary." (*Carmony*, *supra*, 33 Cal.4th at p. 376 [cleaned up].) He argues that the trial court should have deemed him outside the spirit of the Three Strikes law given the remoteness of his prior strike offense, the mostly non-violent nature of his prior record, and his history of mental illness and drug addiction. We disagree.

The record shows Jenkins has an extensive history of criminal activity that has gone largely uninterrupted since his prior strike conviction in 1992. In that case, Jenkins was convicted of robbery (Pen. Code, § 211) and sentenced to a year in jail and three years of probation after he and a companion attacked a victim who was sitting in a car, then stole the victim's money and two jackets. Following a subsequent burglary conviction, his probation was revoked, and he was sentenced to three years in prison. In 1996, after being released from prison, Jenkins was charged with being under the influence of a controlled substance (Health & Saf. Code, § 11550, subd. (a)) on three separate occasions. In 2000, he pled guilty to violating two

5

protective orders (Pen. Code, § 273.6) and being under the influence of a controlled substance and was sentenced to 180 days of jail and five years of summary probation. Jenkins was charged with sale of a controlled substance after he sold narcotics to an undercover officer and was sentenced to six years in prison.

After his release, Jenkins was again convicted of sale of a controlled substance after he sold cocaine base to an undercover officer on two separate occasions. At sentencing, the trial court granted Jenkins' *Romero* motion and sentenced him to four years prison, with execution of that sentence stayed pending completion of three years of formal probation. In 2011, Jenkins pled guilty to misdemeanor fighting in public (§ 415, subd. (1)). In 2015, Jenkins was found guilty by jury to elder abuse (§ 368, subd. (c)) and willful cruelty to a child (§ 273a, subd. (b)) after punching his mother in the face and punching his son in the face and body multiple times. Jenkins was initially sentenced to three years of summary probation, but after his probation was revoked four times, he was sentenced to 240 days in jail.

After his release from jail, Jenkins pled guilty to possession of a controlled substance (Health & Saf. Code, § 11377, subd. (a)) and was sentenced to 30 days in jail in 2017. The next year, Jenkins was arrested after driving around, yelling at various drivers, and throwing rocks at their vehicles. The attacks were unprovoked, and Jenkins threw rocks and damaged four different vehicles. Jenkins pled guilty to vandalism in 2019 and was sentenced to three years of formal probation and one year in jail. Later that year, Jenkins was charged with three separate instances of possession of a controlled substance (Health & Saf. Code, § 11377, subd. (a)) and being a felon in possession of a stun gun (Pen. Code, § 22610, subd. (a)). Less than a year before he faced the underlying charges in this case, Jenkins

6

was charged with possession of a controlled substance and possession of drug paraphernalia (Health & Saf. Code, §§ 11377, subd. (a), 11364).

The longest periods of Jenkins' law-abiding behavior were while he was incarcerated. On this record, the trial court did not abuse its discretion in concluding Jenkins falls within the spirit of the Three Strikes law. (*People v. Beasley* (2022) 81 Cal.App.5th 495, 501 ["A prior conviction may be stricken if it is remote, but '[a] prior strike conviction is not considered "remote" for the purposes of mitigation where the defendant has not demonstrated a prolonged period of rehabilitation (a crime free life) in the interim.' "].)

Contrary to Jenkins' claim that his prior convictions "are almost entirely non-violent," and as the trial court noted in its ruling, his criminal history over the past 10 years evidenced increasingly violent behavior. In 2015, Jenkins was convicted for attacking his son and elderly mother. In 2018, Jenkins threatened multiple drivers and threw rocks at their cars, causing thousands of dollars in damage. Less than five years later, Jenkins committed the underlying attack which left the victim with significant injuries.

Jenkins also argues that his drug use and mental health are mitigating circumstances that support dismissal of the prior strike conviction. Even assuming substance abuse was a contributing factor to Jenkins' criminal history, his lengthy and consistent history of drug abuse and apparent failure to address it supports the trial court's denial of his *Romero* motion. (See, e.g., *People v. Martinez* (1999) 71 Cal.App.4th 1502, 1511 ["drug addiction is not necessarily regarded as a mitigating factor when a criminal defendant has a long-term problem and seems unwilling to pursue treatment"]; *Gaston, supra,* 74 Cal.App.4th at p. 322 ["Although 'drug use appears to be an underlying factor in [appellant's] criminal behavior, and in fact may be the root cause

7

thereof,' the record is barren of any attempts by [defendant] to 'root out' such destructive drug dependency. Accordingly, his drug dependency does not fall into the category of mitigating circumstances."]; *Williams*, *supra*, 17 Cal.4th at p. 163 ["But neither can we ignore the fact that [defendant] . . . did not follow through in efforts to bring his substance abuse problem under control."].)

Moreover, the record here of Jenkins' mental health condition is limited. At the hearing, his attorney argued Jenkins was "not in his right mind" and that when he is "on correct medication and treatment, he's not a threat to public safety." In response to the assertion he was not taking his medicine at the time of the attack, the trial court responded, "it's your responsibility to take your meds." We conclude that Jenkins' apparent mental health condition did not require dismissal of his prior strike conviction. (*People v. Carrasco* (2008) 163 Cal.App.4th 978, 992–994 [finding the trial court did not abuse its discretion in determining a defendant who apparently suffered from mental illness did not fall outside the spirit of the Three Strikes law].)

Finally, Jenkins' reliance on *People v. Avila* (2020) 57 Cal.App.5th 1134, is misplaced. There, the Court of Appeal held that the trial court abused its discretion in denying a *Romero* motion where it was unaware it could consider the defendant's youthful age at the time of the prior strike as a mitigating factor, it mischaracterized the defendant's current crimes as violent, and it failed to recognize that the defendant's criminal record had decreased in severity since the prior strike. (*Avila,* at pp. 1140–1142.) The trial court here made no such errors.

Finding no abuse of discretion, we affirm the trial court's decision.

## DISPOSITION

The judgment is affirmed.


DO, J.

WE CONCUR:


McCONNELL, P. J.


CASTILLO, J.